oral argument not to exceed 15 minutes per side. Mr. Levy for the appellant. Good morning. I'm Pharaoh Levy from Knoxville, Tennessee. May it please the court, we'd like to reserve two minutes of our time for rebuttal. The plaintiff and the defendant in this case had met online and had an online relationship. He lived in Knoxville, Tennessee or near Knoxville. She lived in Indiana and she was visiting him. He had bought her a horse, which he kept at a farm where he lived and near Knoxville. The plaintiff was seriously injured as a result of a horseback riding incident. The trial court granted defendants motion for summary judgment based upon the Tennessee recreational use statute. We think that was incorrect because this case is not a premises liability case. It's based upon the defendant's actions, not related to the land. But first, putting a hackamore bridle he bought for the horse on the Mr. Levy. Good morning. Sorry to interrupt you. Um, can you just go to the statute and give us your best argument for why it's limited to premises liability? So we understand the briefs were effective in that regard. Um, but I'd like to understand your best. Let's see. I just lost your sound. Sorry, that's me. I probably did that. I'd like to understand your best argument from the language of the law itself as to why it's limited to premises liability. Well, I can't. I don't think you need to look at just that statute. But the key and the key. Why don't you start with that and then move on is you pointed in your briefs to some of the other sections. But let's start with 1 0 3 1 0 3. I think the key phrase in 1 0 3 is the very last portion of the first paragraph where it says does not by giving such permission. And I think that is the key phrase does not by giving such permission. And it goes further and assesses certain things. That to me implies that the legislature did not want any argument to occur that just because someone has permission to be on the land that 7 70-7 1 0 2 does not apply. This statute 1 0 3 has been in effect for over three decades. Let me I'm sorry to interrupt you again. Let me give you your friends on the other side's view. And then why don't you rebut it? Which is that the if you look at 1 0 3 3 assume responsibility or incur liability for any injury to such person except is provided in 1 0 4. And then 1 0 4 gives specific instances. Yes. Why aren't they saying, look, if you invite someone onto the land, you are responsible unless you unless you commit gross negligence or one of those things. Does that make sense? I understand that argument, but there's no reason for that sentence by giving permission. I think what the legislature was trying to do to clarify the interaction between 1 0 2 and 1 0 3, they're saying just because the landowner gives you permission does not give you any additional rights. But don't we have to give effect to every portion of the statute? And I'm still struggling to understand your reconciliation of those various points in your response to Judge Shapar. Well, I agree with that. You do have to give effect to all the statutes. And that's one of the reasons why we don't I think 1 0 3 has this broad reading that the trial court gave it. If 1 0 3 has the effect that the defendants claims in 1 0 5, which deals with the release is completely superfluous. So if we take that view, then doesn't the plain language of 1 0 3 necessarily lead to the conclusion that the section is inapplicable to your client, given the given the unique facts of this case? Well, I agree that 1 0 3 is doesn't apply in this case as far as denying her liability. We don't argue with that. OK, well, your counsel, I take it your claim is that the reason the defendant is liable in your view is not that he gave permission to use the land, but the things he did with the bridal. And I suppose you're arguing that she is also an invitee. She's just not she's not just a mere permittee. Well, she was certainly an invitee if the statutes doesn't apply. She was there at his invitation. Well, I mean, number the number two, part two, I would think sort of structurally helps you a bit because it says by giving such permission doesn't make her an invitee. That implies that there are other ways to make her an invitee. And similarly, if giving permission doesn't create liability, there might be other ways to create liability. I agree with the court's reasoning there. We certainly agree with that. And again, if you interpret the statute like the defendant wants, you would get some really and with the purpose of the plaintiff riding on a street and she rides down the street coming back from visiting a neighbor, he decides to take a shortcut without his permission and goes up on the land. The statute would not apply because he never gave his permission. It's not the premises liability. It's a case of negligence. What he did. And I'll also point out to the court that this statute abrogates the common law, so it must be strictly construed. Interpretation of the trial court gives it to not. And when you look at the entire statute of 101 through 105, the purpose of the Tennessee recreational use statute is to protect landowners for claims relating to the defect in the land. The whole statute is worded in that manner and the case law is supportive of that. The case of Wilkinson versus Althauser where a person was injured as a result of a drowning where it was caused by horseplay on a lake belonging to the defendant. The statute was raised and the court held that the statute did not apply because there was no defect in the land. And that's what we have here. We're not claiming there's a defect in the land. We're merely claiming he, the defendant, was negligent. Further, there's the case of Manthe versus TVA where you had a drowning caused by a wake created by tugboat operated by TVA and the district court followed the Wilkerson case and determined that the Tennessee recreational statute did not apply. It must be related to defects in the land. I know of no case has specifically held that the statute applies to defects that are not related to the land. The defendant has not cited any such case. We also believe that the exception in 104 concerning gross negligence applies. The defendant brought the bridle. There's evidence in the record he was an expert horseman. His own son testified extensively about that. In contrast, the plaintiff was classified as a beginning rider by the plaintiff's expert. The defendant knew the bridle was missing a piece. He still told the plaintiff it was okay to ride the horse under those circumstances. Now, the defendant testified that he didn't know anything about hackamore bridles, but if that's the case, he should not have reassured the plaintiff that it was okay to ride with this defective bridle. Secondly, there's a strong inference to be drawn about his conduct where he basically attempted to defraud the court as to the actual bridle that was being used. Counsel, since the district court didn't rule one way or the other on the gross negligence part, are we in any position to make that determination ourselves, or at worst, would we have to remand for the district court to consider it if we agreed with you on the first part? Well, the defendants have raised the issue in their brief trying to claim the gross negligence doesn't apply and are asking the court to consider the motion for summary judgment on that ground and also other grounds that the district court did not consider. Probably the proper thing to do is remand it, but there is case all decided by the defendant indicating this court can make a determination about it. But we point out that the defendant falsely claimed three times that another bridle was the one the plaintiff was using, not the Hackamore bridle was actually being used. And we think that's a strong inference that he was trying to hide something and trying to hide the fact that there was a defect of this bridle. And considering it's an emotion or summary judgment, we're entitled to the benefit of any inferences. As far as the Tennessee Equine Activities Act, which the defendant has also raised, again, we believe the gross negligence is an exception. Plus, and another exception to that act is furnishing defective tack to the rider knowing or should have known that the tack was defective and dangerous. And in this situation, we obviously he did know because the plaintiff questioned him and he reassured her that it wasn't dangerous, which indicates that he knew about it. The defense have also raised the question about common law duties of supplying defective equipment. There's no Tennessee case on that issue, but there is a restatement of torts, which says that one who supplies a channel to another knowing or have reasoning to know that is dangerous is subject to the same liability as a seller. And we have cited two out-of-state cases, which I think are very instructive. One is Ellis versus Caristi in Arizona court where a neighbor or friend loaned someone a sawhorse that the defendant had left off some pieces on, and the sawhorse fell and injured the plaintiff. Court said he could not avoid liability because he had potential liability because he supplied the dangerous instrumentality. The same thing happened in a California case involving a ski rope, which turned out to be defective and the court held that was not a defense. We would ask the court to reverse the decisions of the honorable trial court and remand this matter for trial. Thank you. Thank you. Mr. Johnson, you may begin. And I want to just say at the outset, you know, we talked to Mr. Levy about 103, that section which reads, by giving such permission, you assume responsibility for or incur liability for an injury to such person. And I want to know your interpretation of that in your presentation and whether you believe that that limits the scope of 103's immunity. So your time hasn't begun. I've got my question out. And so you may begin, sir, with your full time. Thank you, Your Honor. May it please the court. My name is John T. Johnson. I represent Defendant Mark Davis. We believe that 70-7-103 speaks for itself. And nowhere in the statute does it limit the use of the recreational use statute to injuries that arise out of hazardous conditions on the land. The statute simply adds a section that says, if you give permission for someone to come onto your land, Mr. and Ms. Landowner, here are the rules of law that apply. Mr. Johnson, can you pull out the language of the law like your friend did? And if you look at the language he relies on, by giving such permission, if you drop that off, right, get rid of by giving such permission. And you agree with the premise that you have to, in Tennessee, you have to give every word of fact if you can in a law. Yes, Your Honor. Drop off by giving such permission. Then I think it reads the way you want to. Upon such land or premises does not assume responsibility for or incur liability for any injury to such person to whom permission has been granted, obviously goes with the giving such permission. So that first clause would read that way. But when you add by giving such permission, it seems to me the permission itself can't be the source of the liability. Does that, does my question make sense? Yes, Your Honor. I'm not familiar with any principle of law in Tennessee that says simply by giving permission for someone to enter your land that you're automatically liable if a person's injured. Well, read, wait, read this. If you read the statute by giving such permission and read number one, extend any assurance that the premises are safe for such purpose, that makes sense. By giving such permission, read two, the giving permission does not change your legal status, right? That's correct. And by giving such permission, you don't assume responsibility for or incur any liability for any injury to such person to whom permission has been granted. It seems to me the key is the permission which relates to the use of the land. And so that's the limitation. What am I missing? It's the permission to come onto the land for recreational purposes. It's simply trying to make clear that a landowner, even if that landowner gives permission, that the person who's injured is not treated as an invitee. It's simply making it clear that there is immunity for that landowner. Well, there's a difference between immunity and not making them an invitee. Do you deny that in this case, Ms. Hulls is an invitee because of the relationship between them? Not because she came on the land, but because she was invited to come down and ride the horse. Well, she would have been an invitee absent the effect of this statute. Well, but the statute doesn't say no one who comes on your land can ever be an invitee, does it? It says does not by giving such permission. That is, it seems to me you're trying to read it as Judge Thapar indicated as hypothetical. If you strike the words does not by giving such permission, then yes, you would have complete immunity. It would say any landowner who gives permission to another person is not liable. The person can't be an invitee, but it still has those words. So, I take it you are trying to say Ms. Hulls is not an invitee, that no one that you invite can be an invitee? Not if that person is entering the premises for recreational purposes as stated in the statute. In other words, the statute provides that the person may have been an invitee. So, if I specifically invite you, not just give permission, you're not an invitee no matter what happens? This statute just says that you don't have the legal duty that you would owe to an invitee. So, it abolishes, in your view, it abolishes a pre-existing duty you have to an invitee. Ordinarily, a landowner would owe a duty to an invitee. But this statute provides immunity and says that you don't owe that duty of care to the person to whom you've given permission. Well, but again, you switched off from being an invitee to simply giving permission. I mean, obviously, one of the things that this statute is designed to, or one of them is, you know, people in the you say, fine, go ahead. It's you are permitted to hunt on my land. That's different in some concept from saying I invite you to come down to my gun club, you and the banker and the lawyer and all the people I'm trying to get business for. I invite you onto my land. Aren't those two different concepts normally? They normally are. One reading of the statute is it abolishes liability in one case subject to 104. But otherwise, why would you say it doesn't constitute you an invitee by giving permission? It would say if you are recreational, you can't have any liability except for 104. That would be the way to write a sensible statute that was as broad as you wanted. You wouldn't have to say sub one, sub two. All you would say is except for 104. But there's nothing in the statute itself that even hints that it is limited to providing immunity for injuries that only occur because of some defective condition of the premise. Well, I'm not going that far. That's your adversary's position. I'm pointing to the language by giving such permission, which is certainly is in the statute. It's something that says, why does it limit the exception to what happens by giving such permission? Not because of, as I said, invitee status. And I take it you are now saying that this abolishes Ms. Hull's rights as an invitee because she's doing recreation. The words of the statute remove that status. If the plaintiff's position is correct in this case, that the statute as a whole applies only to injuries that arise out of hazardous conditions or uses on the property. Then the most recent Tennessee appellate court case addressing the recreational use statute was decided wrongly by our court of appeals. That was the case of McCaig versus Whitmore. And in that case, it was decided in 2016. In that case, there were two types of allegations that were made by the plaintiff. One was a set of allegations made that indeed had to do with some alleged defective condition of the premises. However, there were a second set of allegations where the plaintiff alleged that the defendant landowner had not properly instructed this person as to the appropriate way or the proper way to operate an ATV. And the defendant, relying on section 102, incidentally, and not on 103, relying on 102, filed a motion for summary judgment. The trial court granted the motion for summary judgment, and our court of appeals upheld the grant of the motion for summary judgment even though there were allegations that had nothing to do with the condition of the land, which is a clear implication that our courts do not consider that these statutes are limited to rise from a defective condition of the premises. I would point also to section 102. At the very end of the statute, when it's talking about the landowner not having to give warnings, says the landowner, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering the land. I thought in that case, the court proceeded on assuming there was an unsafe condition on the land. Unsafe condition, those were allegations, but on appeal, and the plaintiff had made two sets of allegations. One did relate exclusively to the condition of the land, but part of the allegations did, they were unrelated to the condition of the premises. They were related to the failure of that landowner to give proper instructions and to tell this ATV operator how he or she should operate the ATV. That is a general negligence type allegation, and that grant of summary judgment should not have happened if this statute were limited in the way plaintiff wants it to be limited. That was applying 102, as you said, correct? Yes, your honor. Yes, your honor, and of course the interesting thing is 103 has barely been mentioned in our case law. It has been mentioned in a couple of cases, but the courts did indicate that it is part of the statutory scheme, and as part of the statutory scheme, it is our position that it should be applied, that it should be given meaning, and it should be given the exact meaning as the legislature stated it in the statute. In this particular case, that means that Myra Hulls did not have the legal status of an invitee, and secondly, Mark Davis didn't assume responsibility for or incur liability for any injury to such person. Interestingly, in the McCaig case, that court relied on the case of parent versus state, which was a Tennessee Supreme Court case, and in that case, the court said there is a two-pronged analysis when you're considering cases under the Tennessee Recreational Use Statute. Number one, was the person who was injured, was that person there for a recreational purpose? If the answer to that is yes, the second question is, do any of these exceptions on 104 apply? But I thought the district court took parent too far. The first step is to determine whether the defense, whatever its scope, applies to the factual circumstances of the case, and the second step is to determine the limitations on the step, on the defense, but neither step expanded the scope of the defense beyond the text of the McCaig case. I'm sorry to interrupt you, but my point is, is neither of those cases went, expanded the language of the statute beyond what it is, and so we go back to the very beginning of your argument, which is going back to the questions Judge Boggs was asking you about the use by giving such permission, it seems to me. No one's discussed that language, and that language was added to the statute somewhat recently, correct? It replaced the word thereby. Yes. Okay, go ahead. Yes. Do you know why that language was added? No, your honor, I do not. I will not say that any of these sections are a model of clarity, but they are what they are, and 103 in its plain language protects Mr. Davis in this case, is our view. It is true that there's an old Tennessee case which held otherwise, but we believe it's been undercut by the decision in McCaig. Furthermore, we also believe that 102 is not limited to cases arising simply out of any hazardous condition of the premises. I pointed it out earlier. But Mr. Johnson, I'm looking at the statute, and I looked at your brief, and listened to your arguments, and I know what Parent says, but in this particular case, there was nothing about the land itself that gave rise to any of this. And so I guess when you look at the statute, and you look at the language that I think both Judge Boggs and Judge DePauw repeatedly taken you back to, I don't see how you get to where you get to by extending this language in the way, and construing it in the way that you do. I just say to you, and this is not a question, I guess, really, but I'm just saying I have a problem with that, because it seems like regardless of whether this accident occurred on Mr. Davis's land, or whether it occurred someplace else, the issue was the bridle that he put on the horse that led to the injury. But there's nothing in either 102 or 103, which says that either statute is limited to injuries occurring because of the hazardous conditions of the premises. There's nothing in either statute that makes that argument, Okay. Thank you, sir. And your time has run. Thank you. Judge Boggs or Judge DePauw, either of you have another question. Okay, Mr. Levy, if you reserve time for rebuttal, we're ready to hear from you. Thank you, Your Honor. Just a couple of matters. The K case that Mr. Johnson discussed, the Court of Appeals obviously treated as a premises liability case. In fact, the very first sentence in the opinion is, this is a premises liability case. And that's how they treated it. They never discussed section 103. Mr. Johnson's correct, there were allegations of insufficient instructions, but the plaintiff in that case could not even say why the accident occurred. And I think that was the downfall of the whole thing. But clearly, the court in that case never specifically said section 103 applies. And Counsel, if I could ask one side question, we have a pending joint motion from you to certify. Now that we've gotten to this point in the briefing and argument, are you both still on that same page that you still support that motion? That was filed almost a year ago, Your Honor. We'd like to get the matter remanded and go back to trial. That's what we would like. Okay. Two other points. We neglected to say in our brief that the Bishop versus Buckner case holds that it is not necessary for us to plead 70-7104 in regard to the various defenses to the Recreational Liability Act. And finally, I think the court is correct that the key phrase in this statute is by giving such permission. And the only way that the defendant can win this case is those words are ignored. Thank you. Thank you. Thank you both for your written and oral advocacy. The matter is submitted and we will issue an opinion in due course. Thank you.